# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| VOLLARA LLC, a Delaware Limited Liability Co., | § § § | |
| VOLLARA CONCEPTS LLC, a Delaware Limited Liability Co., | § § § | Civil Action No.: _____ |
| and | § § § | **COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF** |
| DBG GROUP INVESTMENTS, LLC, a Delaware Limited Liability Co., | § § § | **FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC 1125(d); AND RELATED CLAIMS** |
| Plaintiffs, | § § | |
| v. | § § | **DEMAND FOR JURY TRIAL** |
| VITALIJ KOTOVSKIJ, ANNA CHINYAKOVA, SERGEJ SIMINENKO, VIKTOR MASURKEVICH, VADYM OBUKHOVSKYI, ALEKSANDR ROMASHKANU, ANASTASIIA LEVYTSKA, and NATALYA MITSENGENDLER, as individuals, SHURMAN, INC., a California corporation, and JOHN DOES 1-10, | § § § § § § § § § § | |
| Defendants. | | |

Plaintiffs Vollara LLC ("Vollara"), Vollara Concepts, LLC ("Vollara Concepts"), and DBG Group Investments, LLC ("DBG Group") (collectively, "Plaintiffs") bring this action against Defendants Vitalij Kotovskij, Anna Chinyakova, Sergej Siminenko, Viktor Masurkevich, Vadym Obukhovskyi, Aleksandr Romashkanu, Anastasiia Levytska, Natalya Mitsengendler, Shurman, Inc., and John Does 1-10 (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a); false advertising in violation of the Lanham Act, 15

1

U.S.C. § 1125(a)(1)(b); cyberpiracy in violation of the Lanham Act, 15 U.S.C. § 1125(d); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and trademark infringement and unfair competition under Texas common law.  In support of their Complaint, Plaintiffs state as follows:

## PARTIES

1.      Vollara is a limited liability company, organized under the laws of Delaware with its principal place of business in Dallas, Texas.

2.      Vollara Concepts is a limited liability company, organized under the laws of Delaware with its principal place of business in Dallas, Texas.

3.      DBG Group is a limited liability company, organized under the laws of Delaware with its principal place of business in Dallas, Texas.

4.      As detailed in the following paragraphs, multiple Defendants are acting in concert as part of a coordinated scheme to sell infringing products bearing the Plaintiffs' trademarks, including products bearing counterfeit reproductions of the Plaintiffs' trademarks, through three websites and a storefront on www.eBay.com ("eBay"). All of the Defendants are acting in concert and are jointly responsible for the conduct complained of herein.

5.      Kotovskij is an individual who, on information and belief, resides at 65016, Odessa, Shishkina, 32, Ukraine.

6.      Chinyakova is an individual who, on information and belief, resides at 65016, Odessa, Shishkina, 32, Ukraine.

7.      Chinyakova used to be an authorized distributor of Plaintiffs' products. As a distributor, she previously entered into agreements with Plaintiffs stating that the jurisdiction and

venue of any claim for breach of contract would be the state or federal courts of Dallas County, State of Texas and the claim would be governed by the laws of Texas.

8.      Siminenko is an individual who, on information and belief, resides at Akademika Koroleva 92, Odessa, Ukraine.

9.      Masurkevich is an individual who, on information and belief, resides at Vahrusheva 3, Makeevka, Ukraine.

10.     Masurkevich used to be an authorized distributor of Plaintiffs' products. As a distributor, he previously entered into agreements with Plaintiffs stating that the jurisdiction and venue of any claim for breach of contract would be the state or federal courts of Dallas County, State of Texas and the claim would be governed by the laws of Texas.

11.     Obukhovskyi is an individual who, on information and belief, resides at 5416 Fair Avenue, Apt. 4306, North Hollywood, California 91601.

12.     Obukhovskyi used to be an authorized distributor of Plaintiffs' products. As a distributor, he previously entered into agreements with Plaintiffs stating that the jurisdiction and venue of any claim for breach of contract would be the state or federal courts of Dallas County, State of Texas and the claim would be governed by the laws of Texas.

13.     Romashkanu is an individual who, on information and belief, resides at 5416 Fair Avenue, Apt. 4306, North Hollywood, California 91601.

14.     Romashkanu used to be an authorized distributor of Plaintiffs' products. As a distributor, he previously entered into agreements with Plaintiffs stating that the jurisdiction and venue of any claim for breach of contract would be the state or federal courts of Dallas County, State of Texas and the claim would be governed by the laws of Texas.

15.    Levytska is an individual who, on information and belief, resides at 5416 Fair Avenue, Apt. 4306, North Hollywood, California 91601.

16.    Levytska used to be an authorized distributor of Plaintiffs' products. As a distributor, she previously entered into agreements with Plaintiffs stating that the jurisdiction and venue of any claim for breach of contract would be the state or federal courts of Dallas County, State of Texas and the claim would be governed by the laws of Texas.

17.    Mitsengendler is an individual who, on information and belief, resides at 10945 Hortense Street, Apt. 110, North Hollywood, California 91602.

18.    Mitsengendler used to be an authorized distributor of Plaintiffs' products. As a distributor, she previously entered into agreements with Plaintiffs stating that the jurisdiction and venue of any claim for breach of contract would be the state or federal courts of Dallas County, State of Texas and the claim would be governed by the laws of Texas.

19.    Shurman, Inc. is a corporation organized under the laws of California with its principal place of business at 5416 Fair Avenue, #4306, North Hollywood, California 91601.

20.    Plaintiffs believe that other individuals or entities may also be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to Plaintiffs. Therefore, Plaintiffs sue these Defendants by the fictitious names John Does 1 through 10. When the true names, involvement, and capacities of these parties are ascertained, Plaintiffs will amend or seek leave to amend this Complaint accordingly. If Plaintiffs do not identify any such parties, it will dismiss these Defendants from this action.

## JURISDICTION

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367.  Plaintiffs' federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and their claims arising under the laws of the State of Texas are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

22.     This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the state of Texas and established minimum contacts with Texas by, among other conduct, advertising and selling products bearing Plaintiffs' trademarks and counterfeit reproductions of Plaintiffs' trademarks to consumers within Texas through one or more highly interactive commercial websites through the regular course of business, with knowledge that Plaintiffs are located in Texas and are being harmed by Defendants' sales of counterfeit and infringing products to Texas residents.  Plaintiffs' claims arise out of Defendants' sales of infringing products bearing Plaintiffs' trademarks and counterfeit reproductions of Plaintiffs' trademarks to Texas residents through the regular course of business.

23.     Alternatively, if Defendants are not subject to jurisdiction in any state court of general jurisdiction, this Court has personal jurisdiction over them under Federal Rule of Civil Procedure 4(k)(2) and exercising such jurisdiction is consistent with the United States Constitution and laws.  Defendants have purposefully availed themselves of the privilege of conducting activities and causing a consequence in the state of Texas by advertising and selling counterfeit and infringing products to consumers in Texas through one or more highly interactive commercial websites.  Plaintiffs' claims arise out of Defendants' sales of infringing products bearing Plaintiffs'

trademarks and counterfeit reproductions of Plaintiffs' trademarks to Texas residents through the regular course of business.

## VENUE

24.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district and because multiple Defendants consented to venue in this judicial district.

## FACTUAL ALLEGATIONS
### Plaintiffs and Their Trademarks

25.     Plaintiffs market and sell a variety of natural health and eco-friendly technologies, such as air and water purification devices.  Plaintiffs sell their products exclusively through distributors who are expressly authorized to sell their products.

26.     Plaintiffs devote a significant amount of time, energy, and resources to protecting the value of their brands, products, and reputation.  By distributing products exclusively through authorized distributors, Plaintiffs are better able to control the quality and integrity of their products and ensure that customers receive accurate information about them.

27.     Plaintiffs are the owners or licensees of numerous trademarks related to brands such as EcoQuest, Fresh Air, activTek, Activtek Environmental, ActivePure, Fresh Air By Ecoquest, and Ecobox (the "Plaintiffs' Brands").  Plaintiffs sell products under one or more of these brands.

### The Development of the EcoQuest Brand

28.     The corporation EcoQuest International, Inc., along with its parents, subsidiaries, and/or affiliates (collectively "EcoQuest International"), manufactured and distributed air and water purification products. From at least 2000 to 2009, EcoQuest International, or related entities

that would later become the predecessors-in-interest to Plaintiffs, manufactured and sold those products under the EcoQuest name for direct consumer sale.

29.     Beginning in at least 2007, EcoQuest International, or related entities that would later become the predecessors-in-interest to Plaintiffs, also manufactured and sold air purification products through commercial channels using the activTek mark.

30.     From its inception, EcoQuest International used numerous original trademarks in connection with the sale and distribution of its air filtration products.  These trademarks helped its consumers identify EcoQuest products and distinguish EcoQuest from its competitors.  From 2005 through 2008, EcoQuest International and its affiliates registered several of the marks with the U.S. Patent and Trademark Office ("USPTO"), including FRESH AIR BY ECOQUEST® (Reg. Nos. 3,023,417 and 2,947,914); ECOQUEST® (Reg. No. 3,062,066); ECOBOX® (Reg. No. 3,441,969); ACTIVTEK® (Reg. No. 4,715,402); ACTIVTEK ENVIRONMENTAL® (Reg. No. 3,686,657), and ACTIVEPURE® (Reg. No. 3,427,682) (collectively, the "EcoQuest Trademarks").

31.     Ecoquest International marketed air filtration products under the ACTIVEPURE, ACTIVTEK, ACTIVTEK ENVIRONMENTAL, ECOQUEST, and ECOBOX marks.

32.     Several of the products bearing the EcoQuest Trademarks also received designation as "Certified Space Technology" by the United States Space Foundation ("USSF")—a non-profit that designates products derived from technology used or approved by the National Aeronautics and Space Administration ("NASA").  CERTIFIED SPACE TECHNOLOGY is a certification mark registered by the USSF (Reg. No. 3,230,615).  Through a license with USSF, the Certified Space Technology designation permitted EcoQuest to use the certification mark in its promotional materials for its ActivePure technology.  For instance, products such as the FreshAir Cube feature

Certified Space Technology, and the certification mark has been used continually in their advertisement.

33.     As EcoQuest International grew, it established significant goodwill in the marketplace for its products and brand.  During this time, consumers associated the EcoQuest Trademarks with this goodwill and with EcoQuest International's products and technology.

34.     Due to the quality and exclusive distribution of EcoQuest International's products, and because EcoQuest International was recognized as the source of high quality products, the EcoQuest Trademarks maintained substantial value.

**Plaintiffs' Acquisition of Assets of EcoQuest International**

35.     In 2009, DBG Group acquired the majority of EcoQuest International's assets, including the rights to the EcoQuest Trademarks.  Plaintiffs continue to use the EcoQuest Trademarks.  Plaintiffs also continue to use the CERTIFIED SPACE TECHNOLOGY mark from the USSF in conjunction with its ActivePure products. In addition, Plaintiffs registered additional trademarks related to existing brands and marks.   These include ACTIVTEK® (Reg. No. 4,715,402, registered April 7, 2015) and ACTIVTEK ENVIRONMENTAL® (Reg. No. 5,353,583, registered December 12, 2017) (collectively, these marks and the EcoQuest Trademarks will be referred to as "Plaintiffs' Trademarks").

36.     Since the acquisition of EcoQuest International, Plaintiffs have devoted a significant amount of time, energy, and resources to protecting the value of its brands, products, and reputation.

37.     Plaintiffs also continue to use the EcoQuest Trademarks in commerce in connection with its products and services.  Plaintiffs continue to devote a significant amount of time, energy, and resources to protecting the value of the EcoQuest Trademarks.

38.     Notably, Plaintiffs continue to use the ECOQUEST mark and the FRESH AIR BY ECOQUEST mark in commerce to identify many of their products and services.  In 2015, DBG Group renewed the FRESH AIR BY ECOQUEST mark with the USPTO.  In 2016, DBG Group renewed the ECOQUEST mark with the USPTO.

39.     The registration for each of Plaintiffs' Trademarks is valid, subsisting, and in full force and effect.

40.     Plaintiffs actively use and market Plaintiffs' Trademarks in commerce.

41.     Due to the quality and exclusive distribution of Plaintiffs' products, and because Plaintiffs are recognized as the source of high quality products, Plaintiffs' Trademarks have substantial value.

**Defendants Seek to Cause Consumer Confusion Through Their Use of Plaintiffs' Trademarks on Their Websites and eBay Storefront**

42.     As of the filing of this Complaint, Defendants operate at least three websites: (1) the domain names <ecoquestparts.com>, <ecoquest.shop>, and <ecoquestfreshair.com> all direct to the same website at the <ecoquestfreshair.com> domain name; (2) the <ecoquestpurifiers.com> domain name directs to a separate website; and (3) the <alpinefreshair.com> domain name directs to a separate website (collectively, the "Ecoquest Websites").

43.     Defendants seek to cause consumer confusion by using Plaintiffs' Trademarks as their tradenames, in the domain names for the Ecoquest Websites, on their eBay Storefront, in descriptions of their business on the Ecoquest Websites and eBay Storefront, and in product listings and descriptions on their Ecoquest Websites and eBay Storefront.

44.     Since at least 2016, Defendants have been using "EcoQuest" as their tradename and began using the EcoQuest Trademarks on their commercial websites in connection with their sale of similar products.  With the EcoQuest brand now being maintained, marketed, and used by

Plaintiffs, Defendants perpetrated a campaign to confuse consumers into thinking that Defendants—rather than Plaintiffs—were the successors of the EcoQuest entity or the continuation of the EcoQuest brand.

45.     Defendants began to misappropriate the ECOQUEST mark and other of Plaintiffs' Trademarks by registering several domain names: (1) <ecoquestparts.com>, registered, on information and belief, in April 2016; (2) <ecoquest.shop>, registered in October 2018; (3) <ecoquestpurifiers.com>, registered in February 2019; (4) <ecoquestfreshair.com>, registered in February 2019; and (5) <alpinefreshair.com>, registered in February 2018.

46.     At the URL <https://ecoquestpurifiers.com/support/aboutus/>, Defendants make numerous false and misleading claims:

### About Us

Alpine EcoQuest Living Air has a 25-year history of proven, pioneering success in the air purification industry. Recognizing the need to make the entire indoor environments safer, Alpine EcoQuest Living Air established multiple product lines to address many aspects of living and working indoors. Using principles found in nature, Alpine EcoQuest Living Air uses technologies to duplicate nature's cleaning process indoors.

Alpine EcoQuest Living Air line of products is proven in university studies to reduce 99.9% of mold and bacteria on surfaces in as little as 2 hours, and is scientifically proven to eliminate smoke and odors. Alpine EcoQuest Living Air line of products has also received the prestigious "Certified Space Technology" designation from the NASA-affiliated Space Foundation.

Alpine EcoQuest Living Water combines three water purification technologies: ozonation, ultraviolet light exposure, and photo-oxidation - combined with a high-density, one micron, activated carbon-block filter. This process eliminates harmful bacteria, lead, solvents, chlorine, and other chemicals from household water.

New technologies like Alpine EcoQuest's Laundry Pure are on the cutting-edge of environmentally friendly, money-saving, life-improving innovations. Using many of the same principles of our air and water technologies, Laundry Pure duplicates natural processes to reduce or eliminate the need for detergents and fabric softeners when washing clothes. Laundry Pure also kills germs in clothing and eliminates the need for hot water washes, saving money and energy!

Alpine EcoQuest Living Air has a mission to improve lives - through innovative products, and industry-best home-business opportunity.

Alpine EcoQuest Living Air is based on the belief that our customers' needs are of the utmost importance. Our entire team is committed to meeting those needs. As a result, a high percentage of our business is from repeat customers and referrals.

We would welcome the opportunity to earn your trust and deliver you the best products and service in the industry.

47.     For example, Defendants claim to have a "25-year history of proven, pioneering success in the air purification industry," when, on information and belief, Defendants have not

10

been in business for nearly that long.  Instead, they falsely assert a 25-year history to confuse customers into thinking that they are the successors of the original Ecoquest International.   They also falsely claim that their products have "also received the prestigious 'Certified Space Technology' designation from the NASA-affiliated Space Foundation."  They also falsely claim ownership of "Laundry Pure" technology, which is another brand marketed and sold by Plaintiffs.

48.    Defendants also use confusingly similar images on one of the Ecoquest Websites as Plaintiffs use on their website to advertise their own products. For example, Defendants use Plaintiffs' ACTIVEPURE trademark and nearly identical diagrams to advertise their products as Plaintiffs use on their website, as shown by the screenshots below:

Image from <alpinefreshair.com>



Image from Plaintiffs' website, www.vollara.com



49.     Defendants' use of this content and the ACTIVEPURE mark confuses consumers and leads them to believe that Defendants are affiliated or associated with Plaintiffs.

50.     Defendants also use the ECOQUEST trademark as their trade name to sell products bearing Plaintiffs' Trademarks on an eBay storefront they operate called "EcoQuestGlobal" (the "eBay Storefront").

51.     Defendants make numerous false and misleading claims on their eBay Storefront.

52.     For example, Defendants claim that at "EcoFreshAir . . . [w]e specialize in Fresh Air Purifiers and Parts of the following brands: Alpine, Ecoquest, Living Air & Vollara. We offer top quality products for the lowest cost on the market." *See* https://www.ebay.com/str/EcoFreshAir?_trksid=p2047675.l2563.



53.     Defendants intentionally set up their Ecoquest Websites and eBay Storefront in a manner that falsely suggests that Defendants are the manufacturers or authorized sellers of Plaintiffs' products or are otherwise affiliated with Plaintiffs.  Defendants sell products similar to those sold by Plaintiffs on its website, and every page of the <ecoquestpurifers.com> website contains a banner that advertises and suggests an association with Plaintiffs:



54.     Additionally, Defendants advertise a "Fresh Air Black & Ecobox/Cube Alpine Living Air Purifier" on the eBay Storefront, as shown in the screenshots below:

13



**Best Value Fresh Air Black Limited Edition With FreshAir ECOBOX/Cube ($1099.97 value)**

**with 3-year manufacturer warranty!!!**

- Lowered fan speed for quieter operation.
- Ozone increased by 10%
- New buttons with backlight.
- Lit LCD Display.
- 3 levels of LCD brightness for day/night use.
- New Sleep button on remote control.

If you are looking for a reliable modern air purifier, then Fresh Air is going to be your best bet. Although there are a lot of hi-tech gadgets on the air-cleaning market, none of them bear the exclusive mark "Certified in Space" – a unique sign of Space Foundation granted by NASA. Our engineers have successfully recreated the basic nature process of air cleaning, which allows Fresh Air to preserve air indoors crystal clean 24\7. Well-known worldwide as ActivePure technology, it combines all processes together to bring you the very best quality of air cleaning, including elimination of fetid odors, smoke and other unpleasant atmospheric pollutants. With the Fresh Air technology used in our alpine living air purifiers we have achieved top positions on the market. You won't need another demonstration of its capabilities once you have seen how effective Fresh Air by EcoQuest is.

55.    In the product description for this listing, Defendants falsely claim that the product comes with a three-year manufacturer's warranty, was created by "our engineers," uses "ActivePure technology," and bears the "exclusive mark 'Certified in Space' (sic) – a unique sign of Space Foundation granted by NASA."

56.    The products Defendants sell bearing Plaintiffs' Trademarks were not created by Defendants' engineers, and Defendants are not authorized to sell products using the ACTIVEPURE mark.

57.    Defendants' products have not qualified for USSF's CERTIFIED SPACE TECHNOLOGY mark. Nonetheless, Defendants claim that they are authorized to use the "exclusive mark 'Certified in Space,'" which is confusingly similar to the USSF's certification mark, in an effort to confuse consumers into believing that Defendants are certified by the USSF and NASA and that Defendants are associated or affiliated with Plaintiffs.

58.    Additionally, genuine products purchased from Plaintiffs' distributors come with a limited three-year warranty provided by Vollara that warrants against defects in workmanship or material (the "Warranty").

59.    The Warranty explicitly states that their products are authorized for sale by authorized distributors only, and that their Warranty is "voided if a product is purchased through unauthorized channels, this includes websites that are not authorized to use Vollara's trademarked names, images and logos as well as Internet action sites (e.g. ebay and Craigslist)."

60.    Vollara cannot oversee, track, or take action to correct the quality of products sold by unauthorized sellers. As a result, it does not extend the Warranty to products that are sold by unauthorized sellers.

61.    The infringing products that Defendants sell bearing Plaintiffs' Trademarks do not come with the Warranty because the Warranty does not cover products sold by unauthorized sellers, like Defendants.

62.    The Warranty is a material component of Plaintiffs' genuine products. Consumers who purchase Plaintiffs' products with the Warranty receive the peace of mind that they are

receiving a high-quality product, that Plaintiffs stand behind the product, and that if a defect occurs, they will have the ability to return the product.

63.     Consumers would find it material and relevant to their purchasing decision to know whether the product they are buying is covered by the Warranty. If a consumer knew that one of Plaintiffs' products did not come with the Warranty, the consumer would be less likely to purchase the product.

**Defendants Are Selling Products to Consumers Through Their Websites and Their Sales Infringe Plaintiffs' Rights in Plaintiffs' Trademarks**

64.     In addition to making false and misleading statements on their Ecoquest Websites and eBay Storefront and in advertisements, Defendants have sold—and are currently selling—products bearing Plaintiffs' Trademarks on their Ecoquest Websites and eBay Storefront and, on information and belief, through other channels.

65.     Defendants are selling these products without authorization and in violation of Plaintiffs' intellectual property rights under federal and state law.  Plaintiffs are not affiliated with Defendants.

66.     Through their unauthorized use of Plaintiffs' Trademarks, Defendants have misled—and continue to mislead—consumers into believing that they are purchasing Plaintiffs' products.

67.     For example, in addition to offering repair services and other parts and accessories on the Ecoquest Websites and eBay Storefront, Defendants purport to sell new air purifiers, including those sharing similar names and similar designs as Plaintiffs' products. These include items such as the "Fresh Air Box," "FreshAir Cube EcoBox," "Freshair Surround," and "Fresh Air Surround Purifier," which are substantially similar to Plaintiffs' FreshAir Cube and FreshAir Surround products, as shown in the following screenshots:

16

Image of "Fresh Air Box" from <ecoquestfreshair.com>



Image of "FreshAir Cube EcoBox" from <ecoquestpurifiers.com>



Image of "Fresh Air Box" from <alpinefreshair.com>



Image of "Ozone Ionizer Ecobox Fresh Air Box Purifier Alpine Ecoquest Vollara Living Air" from the eBay Storefront



18

Image of "FreshAir Cube" from Plaintiffs' website, www.vollara.com



68.     Defendants also are using the ECOQUEST mark in connection with products offered for sale on their website. Defendants sell a "Living Air Classic HEPA by EcoQuest." *See* https://alpinefreshair.com/hepa/.



69.     Defendants also are using the ACTIVEPURE mark in connection with products offered for sale on their website.  Defendants sell a "RCI Cell For Fresh Air Ozone Free," which contains the following product description using the ACTIVEPURE mark. *See* https://ecoquestfreshair.com/rci-cells/rci-cell-for-fresh-air-2-0-2-12441/.



70.    As another example, Defendants advertise an "ActivePure RCI PCO Cell 14" as shown in the following screenshot. *See* https://ecoquestpurifiers.com/shop/rci_cells/rci_cell_14/.



71.     On their <alpinefreshair.com> website, Defendants use the ACTIVEPURE mark to advertise the technology used by the products Defendants sell.



72.     Defendants are also using Plaintiffs' ACTIVTEK mark in connection with products offered for sale on their Ecoquest Websites. For example, Defendants advertise and sell a product they advertise as "the activTek INDUCT 500," which they claim comes with "innovative ActivePure technology." *See* https://ecoquestpurifiers.com/shop/living_air/induct_500/.



73.     Defendants also sell products bearing Plaintiffs' Trademarks on which serial numbers have been removed or altered.

74.     Certain of Plaintiffs' genuine products bear a sticker with a unique serial number that allows Plaintiffs to track the product and implement any necessary recall or information dissemination efforts.

75.     Upon information and belief, Defendants remove the serial number stickers from products bearing Plaintiffs' Trademarks and apply their own nearly identical stickers with invalid serial numbers before reselling the products, in an effort to prevent Plaintiffs from tracking the sale of products bearing their trademarks and from identifying the source(s) of unauthorized products sold by Defendants. This interferes with Plaintiffs' ability to exercise quality control over products bearing Plaintiffs' Trademarks.

76.     In connection with Defendants' use of Plaintiffs' Trademarks, Defendants seek to mislead the public into believing that their products are or are related to the product line formerly sold by EcoQuest International and now sold by Vollara and DBG Group.   Defendants' representations are intended to confuse consumers as to Defendants' association with Plaintiffs and Plaintiffs' predecessor to the EcoQuest Trademarks, EcoQuest International.

77.     Upon information and belief, through the Ecoquest Websites and the eBay Storefront, Defendants are accepting and fulfilling orders from Texas residents for products bearing Plaintiffs' Trademarks and are shipping products bearing Plaintiffs' Trademarks to customers located in Texas.

### Defendants' Are Falsely Advertising Products on Their Websites Through Misappropriation of the "Certified Space Technology" Certification Mark

78.     Defendants' websites, which are accessible throughout the United States and beyond, display the "Certified Space Technology" certification mark and the confusing similar

phrase "Certified in Space" in connection with various products advertised and sold by Defendants.

79.    For example, Defendants represent a product advertised as the "Fresh Air Purifier" to be "'Certified in Space' – a unique sign of Space Foundation…" on their Ecoquest Websites. *See* https://ecoquestpurifiers.com/shop/living_air/fresh_air_black/.

If you are looking for a reliable modern air purifier, then Fresh Air is going to be your best bet. Although there are a lot of hi-tech gadgets on the air-cleaning market, none of them bear the exclusive mark "Certified in Space" – a unique sign of Space Foundation granted by NASA. Our engineers have successfully recreated the basic nature process of air cleaning, which allows Fresh Air to preserve its indoors crystal clean 24\7. Well-known worldwide as ActivePure technology, it combines all processes together to bring you the very best quality of air cleaning, including elimination of fetid odors, smoke and other unpleasant atmospheric pollutants. With the Fresh Air technology used in our alpine living air purifiers we have achieved top positions on the market. You won't need another demonstration of its capabilities once you have seen how effective Fresh Air by EcoQuest is.

With Fresh Air by EcoQuest just a simple touch of a button fills the space around you with alpine crystal clean air. Featuring IntelliAir™ system all alpine living air purifiers from Fresh Air series invented by EcoQuest prove to be unbelievably easy to handle. The unit is capable of operating in smart «hands-off» mode and maintaining a cool wind flow. IntelliAir™ system makes things easier for you when it comes to operating the device and setting desired modes or fan speed, and even more – with its notifications you will be able to neatly adjust the microclimate in your home or office!



Air purifiers from series have achieved status of bestseller not by being just simple in use alone. It is the sophisticated technology that sells itself improving lives of numerous people worldwide. Armed with the unparalleled air-cleaning techniques combined together in SynAirG system, alpine living air purifier Fresh Air by ecoquest had deserved to be labeled "Space Certified" because of its unique ActivePure technology. Just imagine how area around you slowly fills with air clean enough for astronauts to breath during their long-lasting space missions! ActivePure technology also includes one plate for even further purifying processes, germicidal UV light with high intensity (100% safe for human), plus proportional ionization as a cherry on top. All functions of this magnificent device can be easily accessed with one small remote control (batteries included for your convenience).

80.    Defendants use the exact same product description in their listing for a "Fresh Air Black & Ecobox/Cube Alpine Living Air Purifier" on their eBay Storefront. *See*

https://www.ebay.com/itm/1-099-97-VALUE-FRESH-AIR-BLACK-ECOBOX-CUBE-

ALPINE-LIVING-AIR-

PURIFIERS/143452429928?hash=item21666e5e68:g:vigAAOSwBLJd3D~a#shpCntId.

---

If you are looking for a reliable modern air purifier, then Fresh Air is going to be your best bet. Although there are a lot of hi-tech gadgets on the air-cleaning market, none of them bear the exclusive mark "Certified in Space" – a unique sign of Space Foundation granted by NASA. Our engineers have successfully recreated the basic nature process of air cleaning, which allows Fresh Air to preserve air indoors crystal clean 24\7. Well-known worldwide as ActivePure technology, it combines all processes together to bring you the very best quality of air cleaning, including elimination of fetid odors, smoke and other unpleasant atmospheric pollutants. With the Fresh Air technology used in our alpine living air purifiers we have achieved top positions on the market. You won't need another demonstration of its capabilities once you have seen how effective Fresh Air by EcoQuest is.

With Fresh Air by EcoQuest just a simple touch of a button fills the space around you with alpine crystal clean air. Featuring IntelliAir™ system all alpine living air purifiers from Fresh Air series invented by EcoQuest prove to be unbelievably easy to handle. The unit is capable of operating in smart «hands-off» mode and maintaining a cool wind flow. IntelliAir™ system makes things easier for you when it comes to operating the device and setting desired modes or fan speed, and even more – with its notifications you will be able to neatly adjust the microclimate in your home or office!

---

Air purifiers from series have achieved status of bestseller not by being just simple in use alone. It is the sophisticated technology that sells itself improving lives of numerous people worldwide. Armed with the unparalleled air-cleaning techniques combined together in SynAirG system, alpine living air purifier Fresh Air by ecoquest had deserved to be labeled "Space Certified" because of its unique ActivePure technology. Just imagine how area around you slowly fills with air clean enough for astronauts to breath during their long-lasting space missions! ActivePure technology also includes one plate for even further purifying processes, germicidal UV light with high intensity (100% safe for human), plus proportional ionization as a cherry on top. All functions of this magnificent device can be easily accessed with one small remote control (batteries included for your convenience).

---

81.    On information and belief, products bearing Plaintiffs' Trademarks that have been manufactured and sold by Defendants have not been designated by the USSF as Certified Space Technology.

82.    On information and belief, Defendants are not authorized to use the USSF's Certified Space Technology mark in any manner.

83.    Defendants also are not authorized to use any of the other of Plaintiffs' Trademarks used in the product descriptions above, including ECOQUEST, FRESH AIR BY ECOQUEST, and ACTIVEPURE.

84.    Many of the products listed on Defendants' website that display the Certified Space Technology mark are products that are similar to and compete with Plaintiffs' products.

85.    To obtain certification, the USSF requires companies to submit an application detailing the products' relationship to the space industry and pay an application fee.

86.     Being able to use the Certified Space Technology mark in connection with a product or company provides a competitive advantage, as consumers have an interest in using products connected to space technology.

87.     Defendants obtained the benefit of advertising their products with the Certified Space Technology mark without going through the certification process or paying the application or licensing fee.

88.     As a result of Defendants' advertising and misuse of the Certified Space Technology mark, Plaintiffs suffered damages, including, without limitation, lost sales of their products.

**Defendants Are Illegally Advertising and Selling Counterfeit Products Bearing Plaintiffs' ACTIVTEK® Trademark and Other Trademarks**

89.     As discussed, Defendants advertise and sell products bearing Plaintiffs' Trademarks on their Ecoquest Websites, and they advertise them in ways that are likely to cause consumer confusion.

90.     Additionally, Defendants also advertise and sell counterfeit products that are not manufactured by Plaintiffs and that bear counterfeit reproductions of Plaintiffs' ACTIVTEK trademark.

91.     Through their unauthorized use of Plaintiffs' ACTIVTEK mark, Defendants have misled—and continue to mislead—consumers into believing that Defendants are (1) the successors to the EcoQuest International company and brand, (2) the source of authentic ACTIVTEK products, and/or (3) selling other products that are identical or fully equivalent to ACTIVTEK products.

92.    For example, on <ecoquestpurifiers.com>, Defendants advertise and sell a product called the Air Scrubber Induct 2000 by ReSPR, but use a picture of what purports to be an activTek Induct product manufactured by Plaintiffs.

93.    This product, depicted on <ecoquestpurifiers.com> and shown below is not Plaintiffs' product, even though it bears a mark identical to, or substantially indistinguishable from, Plaintiffs' ACTIVTEK mark:



94.    When clicking into the link for the product listing at <https://ecoquestpurifiers.com/shop/living_air/air_scrubber_induct_2000/>, the product description refers to the ActivTek Induct 2000, and falsely and misleadingly suggests that the "InDuct 2000" is "the same unit" as numerous other products:

> **Attention:** InDuct 2000, DuctwoRx, Air Scrubber Plus, and ReSPR 1000 are all the same unit under different brand names manufactured for different companies. RCI cell and PCO cell are also the same thing.
>
> The activTek INDUCT 2000 with revolutionary ActivePure® technology can be a major improvement for your typical HVAC system, since it capable not only of eliminating odors and visible smoke, but also removing harmful contamination on surfaces. The INDUCT 2000 has two installation options: for 100 or 277 volts. This unit can be mounted in a ductwork or plenum for significant increase of air quality. Based on the principle «install it and forget», The INDUCT 2000 does not need specific treatment or scheduled cleaning. This unit has a helpful indicator using a UV bulb. It is recommended for working spaces ~2000 square feet.

95.     The activTek Induct 2000 is the name of a product manufactured and sold by Plaintiffs. It is not manufactured or sold by ReSPR. An image of the product, from www.activetek.net, is below:



https://www.activtek.net/CatalogProduct.aspx?ProductId=US40532&Category=hvac.

96.     The activTek Induct 2000 is not the same unit as other products sold under the names DuctwoRx, Air Scrubber Plus, or ReSPR 1000.  The statements made to the contrary by Defendants are false, misleading, and are likely to cause consumer confusion.

97.     Defendants make additional identical false and misleading statements on <ecoquestfreshair.com>.  This time, they show an image of what appears to be an actual activTek Induct 2000 product but describe it as "AIR SCRUBBER INDUCT 2000 BY RESPR":



98.     When     clicking     into     the     link     for     the     product     listing     at
<https://ecoquestfreshair.com/ecoquest-vollara/induct-2000/>, the listing shows the image of the
activTek Induct 2000 (as well as explicitly referring to it as a Vollara product in the URL) and
contains the same language as above, suggesting that the activTek 2000 is the same as various
other products:

> **PRODUCT DESCRIPTION**
>
> **Attention:** InDuct 2000, DuctwoRx, Air Scrubber Plus, and ReSPR 1000 are all the same unit under different brand names manufactured for different companies. RCI cell and PCO cell are also the same thing.

99.     Plaintiffs' authentic products are not manufactured or sold by ReSPR, and neither
Defendants nor ReSPR are affiliated with Plaintiffs.

100.    Additionally, upon information and belief, Defendants also sell products bearing
counterfeit reproductions of Plaintiffs' Trademarks on which serial numbers have been removed
or altered by the person or entity from whom Defendants purchased the products.

101.    By using Plaintiffs' Trademarks and product images to sell counterfeit products, Defendants falsely and misleadingly suggest that the products they sell bearing Plaintiffs' Trademarks are authentic products manufactured by Plaintiffs, and are the same as Plaintiffs' authentic products.

102.    Defendants have knowingly and intentionally sold products bearing counterfeit reproductions of Plaintiffs' products that are identical to or substantially indistinguishable from authentic products manufactured by Plaintiffs. Defendants sold such products through their Ecoquest Websites.

103.    In addition, or in the alternative, Defendants are selling products bearing Plaintiffs' Trademarks on which serial numbers have been removed or altered.

104.    Certain of Plaintiffs' genuine products bear a sticker with a unique serial number that allows Plaintiffs to track the product and implement any necessary recall or information dissemination efforts.

105.    Upon information and belief, Defendants have removed the serial number stickers from products bearing Plaintiffs' Trademarks and applied their own nearly identical stickers with invalid serial numbers before reselling the products, in an effort to prevent Plaintiffs from tracking the sale of products bearing their trademarks. This interferes with Plaintiffs' ability to exercise quality control over products bearing Plaintiffs' Trademarks.

**Identification of Defendants**

106.    All of the Defendants are acting in concert and are jointly responsible for the actions complained of herein.

107.    Until  November  2019,  Whois  records  for  the  <ecoquest.shop>  and <ecoquestpurifiers.com> domains were essentially identical. Kotovskij was the listed registrant

29

for both of the domains, and listed the same physical address and telephone number in the records for both domains.

108.    Until November 2019, the contact email address for both <ecoquestpurifiers.com> and its registrant, Kotovskij, was support@freshairpurifiers.net. According to Whois records, the registrant for the domain <freshairpurifiers.net> is Masurkevich.

109.    However, in November 2019, after detection by Plaintiffs of their unlawful use of the ECOQUEST mark on <ecoquest.shop> and <ecoquestpurifiers.com> and their unlawful sale of products bearing Plaintiffs' Trademarks on their websites, Defendants redirected the <ecoquest.shop> domain to <ecoquestfreshair.com> and changed the name of the registrant of the <ecoquestpurifiers.com> domain from Kotovskij to Chinyakova.

110.    Chinyakova's listed address in Whois records for <ecoquestpurifiers.com> is 65016, Odessa, Shishkina 32, Ukraine (the "65016 Odessa address"). According to Whois records, Kotovskij's listed address as the former registrant for the <ecoquest.shop> domain and the <ecoquestpurifiers.com> domain is also the 65016 Odessa address. This address is also Kotovskij's listed address as the current registrant for the <ecoquestfreshair.com> domain.

111.    As of the filing of this Complaint, Kotovskij is the registrant of the <ecoquestfreshair.com> domain.

112.    As of the filing of this Complaint, Chinyakova is the registrant of the <ecoquestpurifiers.com> domain.

113.    As of the filing of this Complaint, Siminenko is the registrant of the <ecoquestparts.com> domain and <alpinefreshair.com> domain.

114.    Chinyakova, Masurkevich, Obukhovskyi, Romashkanu, Levytska, and Mitsengendler are all former authorized distributors of Plaintiffs' products.

115.     Obukhovskyi attempted to register with the U.S. Patent and Trademark Office the trademark ECOGUEST in January 2018 in connection with "Air purifiers" and "Water purifying apparatus and machines." He listed an email address associated with Levytska as contact information.

116.     Chinyakova, Obukhovskyi, and Misgendler are all former authorized distributors of Plaintiffs' products and have recently purchased or attempted to purchase Plaintiffs' products from Plaintiffs.

117.     In making these purchases, Obukhovskyi listed his address to Plaintiffs as both 4335 Van Nuys Blvd. #385, Sherman Oaks, CA 91601 (the "4335 Van Nuys address") and 5416 Van Nuys Blvd. #385, Sherman Oaks, CA 91601 (the "5416 Van Nuys address").

118.     The 4335 Van Nuys address is nearly identical to the mailing address listed on the Ecoquest Websites ecoquestfreshair.com and alpinefreshair.com. These two websites list the zip code for the 4335 Van Nuys address as "91403" instead of 91601. In fact, the correct zip code is "91403," and this address is a postal box. Upon information and belief, Defendants listed the incorrect zip code when purchasing products from Plaintiffs in an attempt to evade detection.

119.     The 5416 Van Nuys address is not a legitimate address.

120.     However, Obukhovskyi has resided at 5416 Fair Avenue, #4306, North Hollywood, California 91601 (the "5416 Fair Ave. address").

121.     Both Romashkanu and Levytska also either currently reside or have resided at the 5416 Fair Ave. address. Additionally, Romashkanu and Levytska were once married and are currently divorced.

122.     Romashkanu has also used the postal box at the 4335 Van Nuys address.

31

123.    According to corporate records, Romashkanu is the agent, chief executive officer, secretary, and chief financial officer of Shurman, Inc., a California corporation in the business of "International Sales" whose principal place of business is the 5416 Fair Ave. address.

124.    Shurman, Inc. has imported air purifiers that were shipped to 8101 Orion Avenue #5, Van Nuys, California 91406 (the "8101 Orion address"), which appears to be a warehouse.

125.    One of these shipments was marked "Ecoguest Air Purifier" and another was marked "Ecoquest Ozone Blaster."

126.    The shipment bearing the Ecoguest label was sent to Shuman, Inc. and Mitsengendler at the 8101 Orion address.

127.    The shipment bearing Plaintiffs' ECOQUEST mark connected to a phone number associated with both Levytska and Mitsengendler.

128.    Additionally, Mitsengendler has also resided at the 5416 Fair Ave. address.

129.    Upon information and belief, one of the Defendants used the alias Sergey Bogopolskiy, purporting to be Mitsengendler's husband, to communicate with Plaintiffs about the shipment of Plaintiffs' products ordered by Mitsengendler. The phone number "Bogopolskiy" gave Plaintiffs as contact information is associated with both Romashkanu and Levytska.

130.    Based on these facts, all of the defendants are acting in concert as part of a coordinated scheme to sell infringing products bearing the Plaintiffs' trademarks, including products bearing counterfeit reproductions of the Plaintiffs' trademarks, through the Ecoquest Websites and the eBay Storefront. All of the defendants are acting in concert and are jointly responsible for the conduct complained of herein.

131.    Despite the changes to registrant and domain names, all of the Ecoquest Websites are operated and controlled by Defendants.

132.   Both <ecoquestfreshair.com> and <ecoquestpurifiers.com> have listed the same phone number as contact information, as shown in the following screenshots:

Image from <ecoquestfreshair.com>



Image from <ecoquestpurifiers.com> (taken and cached October 30, 2019)



133.   Both <ecoquestfreshair.com> and <ecoquestpurifiers.com> use the same logo to identify the websites, as shown in the highlighted portions of the following screenshot:



134.   All of the Ecoquest Websites use the same tool—a popup box from "Miriam"—to communicate with visitors to the websites, as shown in the following screenshots:

Image from <ecoquestfreshair.com>



Image from <ecoquestpurifiers.com>



Image from <alpinefreshair.com>



135.    Both <ecoquestfreshair.com> and <alpinefreshair.com> list the same address as

contact information, as shown in the following screenshots:

Image from <ecoquestfreshair.com>



Image from <alpinefreshair.com>

136.    Defendants also have spread their misappropriation campaign beyond the Ecoquest

Websites and use nearly identical Google keyword ads to attract customers.  As recently as January

2020, a Google search for "ecoquest" featured a Google keyword ad for <ecoquestpurifiers.com>

that billed it as the "Official EcoQuestFreshAir Site."  The same search also featured a Google

keyword ad for <ecoquestfreshair.com> that also billed it as the "Official EcoQuestFreshAir Site."

137.    These advertisements intend to confuse consumers into thinking that Defendants are official and authorized distributors of Plaintiffs' products when, in fact, they are not.

138.    Defendants' actions are knowing and willful. In fact, in 2017, a panel of the World Intellectual Property Organization (WIPO) found that Masurkevich was operating the domain names <ecoquest-air.com> and <ecoquestair.com> in violation of DBG Group's trademarks rights to the ECOQUEST mark. It found that the domain names were identical or confusingly similar to the mark, Masurkevich had no right or legitimate interest in the mark, and Masurkevich was using the registered mark in bad faith. As a result, it ordered that the domain names be transferred to DBG Group. *See DBG Group Investments, LLC v. Viktor Masurkevich*, No. D2017-1159 (WIPO Aug. 26, 2017).

139.    Based on the facts that (1) two of the Ecoquest Websites list the same phone number; (2) two of the Ecoquest Websites use the same logo; (3) all of the Ecoquest Websites use the same popup box tool; (4) two of the Ecoquest Websites list the same address; (5) two of the

Ecoquest Websites use nearly identical Google keyword advertisements; (6) both Chinyakova and Kotovskij list the same 65016 Odessa address as registrant addresses for the domain names; (7) Siminenko is the registrant of two of the domain names connected to the Ecoquest Websites; (8) Obukohovskyi, Chinyakova, and Mitsengendler have all recently purchased or attempted to purchase products from Plaintiffs and are associated with Shurman, Inc. and the addresses and other contact information on the Ecoquest Websites; and (9) Masurkevich has previously been found by a WIPO panel to be infringing Plaintiffs' trademark rights in a nearly identical manner; it is clear that the Ecoquest Websites are all jointly operated and controlled by Defendants.

### Plaintiffs Have Suffered Substantial Harm

140.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their goodwill, business, and to Plaintiffs' Trademarks.

141.    Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

142.    Plaintiffs are entitled to injunctive relief because Defendants will otherwise continue to unlawfully sell infringing and counterfeit products under Plaintiffs' brands. Defendants' ongoing unlawful conduct has caused, and will continue to cause, irreparable harm to Plaintiffs' goodwill, and has caused, and will continue to cause, Plaintiffs to lose business.

### FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114

143.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

144.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks.

145.    Plaintiffs have registered Plaintiffs' Trademarks with the United States Patent and Trademark Office.

36

146.    Plaintiffs' Trademarks are valid and subsisting trademarks in full force and effect.

147.    Through Defendants' Ecoquest Websites and eBay storefront, Defendants have willfully and knowingly used, and continue to use, Plaintiffs' Trademarks in interstate commerce for purposes of advertising, promoting, and selling products bearing Plaintiffs' Trademarks without Plaintiffs' consent.

148.    The products Defendants sell bearing Plaintiffs' Trademarks do not come with the Warranty.

149.    Because the products Defendants sell bearing Plaintiffs' Trademarks do not come with the Warranty, they are materially different from genuine Plaintiffs' products sold by Plaintiffs' authorized distributors.

150.    Additionally, as discussed above, Defendants have used Plaintiffs Trademarks without Plaintiffs' authorization as their tradenames; in the domain names for the Ecoquest Websites; on their eBay Storefront; in descriptions of their business on the Ecoquest Websites and eBay Storefront; in product listings and descriptions on their Ecoquest Websites and eBay Storefront; in Google advertisements; to sell products bearing Plaintiffs' Trademarks on their Ecoquest Websites and eBay Storefront, and, on information and belief, through other channels.

151.    Defendants' unauthorized sales of products bearing Plaintiffs' Trademarks are likely to cause consumer confusion, cause mistake, or deceive consumers because Defendants' use of Plaintiffs' Trademarks suggests that the products Defendants offer for sale are genuine Plaintiffs' products when, in fact, they are not.

152.    Defendants' use of Plaintiffs' Trademarks in connection with their unauthorized sale of products is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as Plaintiffs'

37

products legitimately bearing Plaintiffs' Trademarks, and originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

153.    The products sold by Defendants are not, in fact, Plaintiffs' genuine and authentic products and they are not sponsored by, approved by, or otherwise connected with Plaintiffs.

154.    Upon information and belief, Defendants alter the serial numbers on products bearing Plaintiffs' Trademarks by removing the serial numbers from products bearing Plaintiffs' Trademarks and applying their own nearly identical serial numbers before reselling the products, in an effort to prevent Plaintiffs from tracking the sale of products bearing their trademarks and from identifying the source of unauthorized products.

155.    By altering the serial numbers on products bearing Plaintiffs' Trademarks, Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks interferes with Plaintiffs' quality controls and ability to exercise quality control over products bearing Plaintiffs' Trademarks.

156.    Defendants' unauthorized use of Plaintiffs' Trademarks has materially damaged the value of Plaintiffs' Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on Plaintiffs' Trademarks.

157.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

158.    Plaintiffs are entitled to recover damages caused by Defendants' infringement of Plaintiffs' Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

159.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

160.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### Trademark Counterfeiting
### 15 U.S.C. § 1114(1)(a)

161.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

162.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, including the ACTIVTEK® trademark.

163.    Plaintiffs have registered the ACTIVTEK® trademark with the United States Patent and Trademark Office.

164.    The ACTIVTEK® trademark is a valid and subsisting trademark in full force and effect.

165.    Defendants willfully and knowingly used in commerce, and continue to use, counterfeit reproductions of the ACTIVTEK® trademark that are identical to, or substantially indistinguishable from, the ACTIVTEK® trademark on goods covered by Plaintiffs' federal trademark registrations.

166.    Defendants have intentionally used these spurious designations, knowing that they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

167. Defendants' use of the ACTIVTEK® trademark to advertise, promote, offer for sale, distribute, and sell products bearing counterfeit trademarks was at all times and is currently without Plaintiffs' authorization, license, or consent.

168. Defendants' unauthorized use of the ACTIVTEK® trademark on goods bearing counterfeit trademarks in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods on the Internet constitutes use of the ACTIVTEK® trademark in commerce.

169. Defendants' unauthorized use of the ACTIVTEK® trademark is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to incorrectly believe that Defendants' goods are the same as authentic ACTIVTEK® products and/or that the products sold by Defendants are affiliated with, connected to, associated with, or in some way related to Plaintiffs; (c) result in Defendants benefitting from Plaintiffs' advertising and promotion; and (d) result in Defendants unfairly profiting from Plaintiffs' reputation and trademarks, all to the substantial and irreparable injury of the public, Plaintiffs, the ACTIVTEK® trademark, and the substantial goodwill they represent.

170. Upon information and belief, Defendants also sell products bearing counterfeit reproductions of Plaintiffs' Trademarks on which the serial numbers have been removed or altered by the person or entity from whom Defendants purchased the products.

171. Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

172. By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) statutory damages of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Plaintiffs' election, an amount representing three times Plaintiffs' damages

and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

173.    Plaintiffs are also entitled to temporary, preliminary, and permanent injunctive relief, including an order permitting the seizure of all "goods and counterfeit marks . . . the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violation[s]" pursuant to 15 U.S.C. § 1116(d).

174.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer, immediate and irreparable harm. Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**False Advertising regarding Plaintiffs' Trademarks, Defendants' Affiliation with Plaintiffs, and Coverage of the Warranty**
**15 U.S.C. § 1125(a)(1)(b)**

175.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

176.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public. Plaintiffs are widely recognized as the designated source of goods bearing Plaintiffs' Trademarks.

177.    Plaintiffs have registered Plaintiffs' Trademarks with the United States Patent and Trademark Office.

178.    Plaintiffs' Trademarks are valid and subsisting trademarks in full force and effect.

179.    Through Defendants' Ecoquest Websites and eBay storefront, Defendants have willfully and knowingly used, and continue to use, Plaintiffs' Trademarks in interstate commerce

for purposes of advertising, promoting, and selling products bearing Plaintiffs' Trademarks without Plaintiffs' consent.

180.    Defendants' advertisements and promotions of their products unlawfully using Plaintiffs' Trademarks have been disseminated to the relevant purchasing public.

181.    Genuine Plaintiffs' products purchased from Plaintiffs' distributors, who comply with Plaintiffs' quality controls, come with the Warranty.

182.    Plaintiffs cannot oversee, track, or take action to correct the quality of its products sold by unauthorized sellers. As a result, Plaintiffs do not extend the Warranty to products that are sold by unauthorized sellers. Accordingly, the products Defendants sell bearing Plaintiffs' Trademarks do not come with the Warranty.

183.    Additionally, products cease to be covered by the Warranty if their serial number is removed, or if they have a serial number that is otherwise invalid.

184.    Defendants falsely advertise that the products they sell bearing Plaintiffs' Trademarks come with the Warranty by stating in their product listings that they come with a "3-year manufacturer warranty."

185.    These representations are false because the products Defendants sell bearing Plaintiffs' Trademarks do not come with the Warranty.

186.    In addition to falsely advertising that their products come with the Warranty, Defendants falsely advertise that they have a "25-year history of proven, pioneering success in the air purification industry," own the "Laundry Pure" technology, are authorized to use the "Certified in Space" mark, and used their own engineers to create the products they sell.

187.    These representations are false because Defendants have not been in business for 25 years, Defendants do not own the "Laundry Pure" technology, are not authorized to sell

products using the ACTIVEPURE or "Certified in Space" marks, and did not create the products they sell bearing Plaintiffs' Trademarks.

188.    Defendants' false and misleading statements and unauthorized and deceptive use of Plaintiffs' Trademarks on their Ecoquest Websites, eBay Storefront, and otherwise online is material and likely to influence consumers to purchase the products, as consumers are likely to believe that products advertised by Defendants using Plaintiffs' Trademarks are genuine and authentic products that originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

189.    In addition, Defendants' unauthorized and deceptive use of Plaintiffs' Trademarks on their Ecoquest Websites, eBay Storefront, and otherwise online is material and likely to influence consumers to purchase the products, as consumers are likely to believe that products bearing Plaintiffs' Trademarks have been developed and manufactured by Defendants.

190.    In addition, Defendants make false and misleading claims on their Ecoquest Websites and eBay Storefront that they are affiliated with Plaintiffs or are the manufacturers of products bearing Plaintiffs' Trademarks.

191.    Defendants are not affiliated in any way with Plaintiffs, and Defendants have not developed or manufactured any products containing Plaintiffs' proprietary technology.

192.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks and unauthorized use of Plaintiffs' Trademarks in advertising have materially damaged the value of Plaintiffs' Trademarks and caused significant damage to Plaintiffs' business relations.

193.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

194.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

195.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### False Advertising regarding Certified Space Technology Mark
### 15  U.S.C. § 1125(a)(1)(b)

196.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

197.    The USSF is the owner of the CERTIFIED SPACE TECHNOLOGY (Reg. No. 3,322,368) certification mark.

198.    Plaintiffs are authorized by the USSF to use the Certified Space Technology mark on various products.

199.    Defendants are not authorized by the USSF to use the Certified Space Technology mark on any products or in any manner.

200.    In their advertisements on the Ecoquest Websites and elsewhere on the Internet, Defendants have willfully and knowingly used the CERTIFIED SPACE TECHNOLOGY mark in interstate commerce in connection with the sale and advertising of Defendants' products.

201.    Defendants' unauthorized and misleading use of the CERTIFIED SPACE TECHNOLOGY mark on the Ecoquest Websites and otherwise online is material and likely to influence consumers to purchase the products, as consumers are likely to believe that products advertised by Defendants meet the standards for CERTIFIED SPACE TECHNOLOGY maintained by USSF.

44

202.    Defendants' use of the CERTIFIED SPACE TECHNOLOGY mark provides a competitive advantage for Defendants because consumers are more likely to purchase Defendants products falsely believing that they meet the certification requirements of USSF.

203.    Plaintiffs have been damaged and have lost sales to Defendants as a result of Defendants' false advertising using the CERTIFIED SPACE TECHNOLOGY mark.

204.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

205.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

### FIFTH CAUSE OF ACTION
### Claim for Relief for Cyberpiracy/Cybersquatting
### 15 U.S.C. § 1125(d)

206.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

207.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, including the ECOQUEST® mark.

208.    Plaintiffs have registered Plaintiffs' Trademarks with the United States Patent and Trademark Office.

209.    Plaintiffs' Trademarks are valid and subsisting trademarks in full force and effect.

210.    Through at least four domain names—<ecoquestparts.com>, <ecoquest.shop>, <ecoquestfreshair.com>, and <ecoquestpurifiers.com>—Defendants have willfully and knowingly used, and continue to use, Plaintiffs' Trademarks in interstate commerce for purposes of advertising, promoting, and selling products bearing Plaintiffs' Trademarks without Plaintiffs' consent and in conjunction with products that do not originate from Plaintiffs.

211.    The ECOQUEST® mark is inherently distinctive and has otherwise become distinctive through acquiring secondary meaning by the consuming public, and was distinctive in April 2016 when the <ecoquestparts.com> domain—the earliest domain of the Ecoquest Websites—was registered.

212.    Plaintiffs are widely recognized as the designated source of goods bearing Plaintiffs' Trademarks.

213.    Defendants have no rights in or to the ECOQUEST® mark.

214.    The four domain names that Defendants registered with the intent to use them to operate the Ecoquest Websites—<ecoquestparts.com>, <ecoquest.shop>, <ecoquestfreshair.com>, and <ecoquestpurifiers.com>—are all substantially identical to or confusingly similar to the ECOQUEST® mark.

215.    Defendants' conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in the ECOQUEST® mark.  At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiffs' rights.

216.    Defendants' actions were conducted in bad faith with an intent to profit from the use of the ECOQUEST® mark, as Defendants' business names themselves were adopted in bad faith.

217.    Defendants have no use of the ECOQUEST® mark that would qualify as a bona fide noncommercial or fair use of the mark in a website accessible under the domain name, but instead they operate commercial websites intended to improperly divert Internet customers from websites authorized by Plaintiffs to Defendants' websites and storefront for commercial gain.

218.    Defendants' actions harm the goodwill of Plaintiffs, tarnish their reputations and the ECOQUEST® mark, and create a likelihood of confusion as to the source, sponsorship, affiliation, and endorsement of Defendants' Ecoquest Websites by Plaintiffs.

219.    By virtue of these acts by Defendants, Plaintiffs have suffered, and will continue to suffer, damages and irreparable harm unless Defendants are preliminarily and permanently enjoined from using the Ecoquest Websites' domain names to infringe the ECOQUEST® mark and are ordered to transfer to Plaintiffs ownership of the infringing domains, as well as any other domains that may be discovered to be similarly infringing, to Plaintiffs.

220.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Unfair Competition (Passing Off)**
**15 U.S.C. § 1125(a)**

221.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

222.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  Plaintiffs are widely recognized as the designated source of goods bearing Plaintiffs' Trademarks.

223.    Plaintiffs have registered Plaintiffs' Trademarks with the United States Patent and Trademark Office, and Plaintiffs' Trademarks are valid and subsisting trademarks in full force and effect.

224.    Defendants have willfully and knowingly used Plaintiffs' Trademarks in commerce through the sale and advertising of products without the consent of Plaintiffs.

225.    Defendants' use of Plaintiffs' Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Defendants' products because it misrepresents that the products and technology offered for sale by Defendants originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

226.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks and unauthorized use of Plaintiffs' Trademarks in advertising have materially damaged the value of Plaintiffs' Trademarks and caused damage to Plaintiffs' business relations.

227.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

228.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

229.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

### SEVENTH CAUSE OF ACTION
**Unfair Competition (Reverse Passing Off)**
**15 U.S.C. § 1125(a)**

230.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

231.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.

48

232.    Plaintiffs are widely recognized as the designated source of goods bearing Plaintiffs' Trademarks.

233.    Plaintiffs have registered Plaintiffs' Trademarks with the United States Patent and Trademark Office, and Plaintiffs' Trademarks are valid and subsisting trademarks in full force and effect.

234.    Defendants have willfully and knowingly used Plaintiffs' Trademarks in commerce through the sale and advertising of products without the consent of Plaintiffs.

235.    Defendants are offering products for sale under the activTek mark that, on information and belief, originate from Plaintiffs and contain technology proprietary to Plaintiffs. Defendants' offers and advertisements to sell these goods falsely designate the goods as originating from Defendants.

236.    Defendants' unauthorized and deceptive use of Plaintiffs' Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Plaintiffs because it falsely suggests that products sold by Defendants that were manufactured and developed by Plaintiffs were developed and manufactured by Defendants.

237.    Defendants are not affiliated in any way with Plaintiffs, and Defendants have not developed or manufactured activTek products or any other products containing Plaintiffs' proprietary ActivePure technology.

238.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks, and unauthorized use of Plaintiffs' Trademarks in advertising, have materially damaged the value of Plaintiffs' Trademarks and caused significant damage to Plaintiffs' business relations.

49

239.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

240.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief enjoining Defendants' infringing conduct.

241.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to enhanced damages and an award of attorneys' fees.

### EIGHTH CAUSE OF ACTION
### Texas Common Law Trademark Infringement

242.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

243.    This claim arises under the laws of the State of Texas.

244.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public. As such, Plaintiffs' Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

245.    Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under Plaintiffs' Trademarks. Products bearing Plaintiffs' Trademarks are sold by Plaintiffs throughout the United States, including Texas. Plaintiffs are widely recognized as the designated source of goods bearing Plaintiffs' Trademarks.

246.    Defendants willfully and knowingly used, and continue to use, Plaintiffs' Trademarks in commerce on the Ecoquest Websites, eBay Storefront, and elsewhere on the Internet for the purpose of selling Defendants' products without the consent of Plaintiffs.

247.    Defendants' use of Plaintiffs' Trademarks in connection with their unauthorized sale of products is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as Plaintiffs' products legitimately bearing Plaintiffs' Trademarks, and originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

248.    The products sold by Defendants are not, in fact, Plaintiffs' genuine and authentic products.

249.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks and unauthorized use of Plaintiffs' Trademarks in advertising have materially damaged the value of Plaintiffs' Trademarks and caused significant damage to Plaintiffs' business relations.

250.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

251.    Plaintiffs are entitled to recover damages caused by Defendants' infringement of Plaintiffs' Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

252.    In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## NINTH CAUSE OF ACTION
### Texas Common Law Unfair Competition (Passing Off)

253.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

254.    This claim arises under the laws of the State of Texas.

255.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public. As such, Plaintiffs' Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

256.    Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under Plaintiffs' Trademarks.  Products bearing Plaintiffs' Trademarks are sold by Plaintiffs throughout the United States, including Texas. Plaintiffs are widely recognized in Texas as the designated source of goods bearing Plaintiffs' Trademarks.

257.    Defendants have willfully and knowingly used Plaintiffs' Trademarks in commerce through the sale and advertising of products without the consent of Plaintiffs throughout the United States, including Texas.

258.    Defendants' use of Plaintiffs' Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Defendants' products because it misrepresents that the products offered for sale by Defendants originate from, or are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs.

259.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks and unauthorized use of Plaintiffs' Trademarks in advertising have materially damaged the value of Plaintiffs' Trademarks and caused significant damage to Plaintiffs' business relations.

260.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

261.    In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

**TENTH CAUSE OF ACTION**
**Texas Common Law Unfair Competition (Reverse Passing Off)**

262.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

263.    This claim arises under the laws of the State of Texas.

264.    Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  As such, Plaintiffs' Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

265.    Plaintiffs' Trademarks are valid and subsisting trademarks in full force and effect.

266.     Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under Plaintiffs' Trademarks.  Products bearing Plaintiffs' Trademarks are sold by Plaintiffs throughout the United States, including Texas. Plaintiffs are widely recognized in Texas as the designated source of goods bearing Plaintiffs' Trademarks.

267.    Products offered for sale by Defendants under the activTek and Induct brands originate from Plaintiffs and contain technology proprietary to Plaintiffs.

268.    Defendants' offers to sell these goods falsely designate the goods as originating from Defendants.

269.    Defendants' unauthorized and deceptive use of Plaintiffs' Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Defendants' products because it misrepresents that products sold by Defendants that were manufactured and developed by Plaintiffs with Plaintiffs' proprietary technology have been developed and manufactured by and otherwise originate from Defendants.

270.    Defendants are not affiliated in any way with Plaintiffs, and Defendants have not developed or manufactured activTek and Induct products, or any other products containing Plaintiffs' proprietary technology, such as ActivePure.

271.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks and unauthorized use of Plaintiffs' Trademarks in advertising have materially damaged the value of Plaintiffs' Trademarks and caused significant damage to Plaintiffs' business relations.

272.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

273.    In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## ELEVENTH CAUSE OF ACTION
### Texas Common Law Unfair Competition (Misappropriation)

274.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

275.     This claim arises under the laws of the State of Texas.

276.     Plaintiffs have registered Plaintiffs' Trademarks with the USPTO.

277.     Plaintiffs are the owners or licensees of Plaintiffs' Trademarks, which are inherently distinctive marks and have otherwise become distinctive through acquiring secondary meaning by the consuming public.  As such, Plaintiffs' Trademarks are the means by which Plaintiffs' products and services are distinguished from others in the marketplace throughout the United States, including Texas.

278.      Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting their products and services under Plaintiffs' Trademarks.  Products bearing Plaintiffs' Trademarks are sold by Plaintiffs throughout the United States, including Texas. Plaintiffs are widely recognized in Texas as the designated source of goods bearing Plaintiffs' Trademarks.

279.     Defendants willfully and knowingly used Plaintiffs' Trademarks in commerce through the sale and advertising of products in competition with Plaintiffs without the consent of Plaintiffs throughout the United States, including Texas.

280.     Defendants' use of Plaintiffs' Trademarks in connection with their unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Defendants' products because it misrepresents that the

products offered for sale by Defendants originate from, or are sponsored by, authorized by, approved by or otherwise connected with Plaintiffs and their predecessor EcoQuest International.

281.    Likewise, Defendants use of Plaintiffs' Trademarks misrepresents that products sold by Defendants that actually do originate from Plaintiffs, originate from Defendants or are otherwise connected with products and technology developed and manufactured by Defendants.

282.    In doing so, Defendants free ride off of Plaintiffs' time, labor, skill, and money.

283.    Defendants' unauthorized sale of products bearing Plaintiffs' Trademarks and unauthorized use of Plaintiffs' Trademarks in advertising have materially damaged the value of Plaintiffs' Trademarks and caused significant damage to Plaintiffs' business relations.

284.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage, including to their business, goodwill, reputation, and profits in an amount to be proven at trial.

285.    In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.  Accordingly, Plaintiffs are entitled to an award of punitive damages.

## CONDITIONS PRECEDENT

286.    All conditions precedent to Plaintiffs' claims for relief, if any, have occurred or have been performed.

## REQUEST FOR ATTORNEYS' FEES

287.    Plaintiffs are entitled to recover its attorneys' fees and costs for this action, pursuant to the federal and state law identified herein, and Plaintiffs hereby seek such recovery from

Defendants of all its reasonable and necessary attorneys' fees and costs for prosecuting this action and obtaining the relief requested herein.

## JURY DEMAND

288.    Plaintiffs demand a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.      Judgment in favor of Plaintiffs and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing Plaintiffs' Trademarks,

ii)     Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products that contain Plaintiffs' proprietary technology,

iii)    Prohibiting the Enjoined Parties from using any of Plaintiffs' Trademarks in any manner, including advertising on the Internet,

iv)     Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all of Plaintiffs' products, as well as any products bearing any of Plaintiffs' Trademarks,

v)      Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain Plaintiffs' Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and

any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

vi)   Prohibiting the Enjoined Parties from registering, attempting to register, or maintaining any trademark registration, trademark, trade name, domain name, trade designation, or other indicia of original or source compromising or containing the ECOQUEST, ACTIVTEK, or ACTIVEPURE marks (or any variation thereof, whether alone or in combination with any other word(s) or element(s)), or any mark, name, domain name, or other designation that depicts, contains, or consists of any name or mark confusingly similar to the ECOQUEST, ACTIVTEK, or ACTIVEPURE marks;

vii)  Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Plaintiffs' products, or any of Plaintiffs' Trademarks,

viii) Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of Plaintiffs' Trademarks which associate Plaintiffs' products or Plaintiffs' Trademarks with the Enjoined Parties or the Enjoined Parties' website(s), and

ix)   Requiring the Enjoined Parties to take all action to remove Plaintiffs' Trademarks from the Internet, including from the websites www.ecoquestfreshair.com, www.ecoquestpurifiers.com, and www.alpinefreshair.com, and the Enjoined Parties' storefront on www.ebay.com;

x)    Requiring the Enjoined Parties to transfer any domain names containing ECOQUEST, ACTIVTEK, or ACTIVEPURE, or any variation therefore, in the Enjoined Parties' possession, custody, or control to Plaintiffs, or that the Court order forfeiture or cancellation of such domain names.

C.   An award of attorneys' fees, costs, and expenses; and

D.   Such other and further relief as the Court deems just, equitable and proper.


Dated: May 6, 2020                         Respectfully submitted,


                                           By: /s/ *Andrew M. Howard*


                                           **Andrew M. Howard**
                                           amh@hs-firm.com
                                           Texas Bar No. 24059973
                                           Andrew G. Spaniol
                                           ags@hs-firm.com

Texas Bar No. 24063012
**HOWARD & SPANIOL, PLLC**
5220 Spring Valley Road, Suite 406
Dallas, Texas 75254
Telephone: (214) 974-0585
Facsimile: (469) 645-0166

**Kent A. Britt**
kabritt@vorys.com
N.D. Tex. Reg. No. 0068182
Ohio Bar No. 68182
**VORYS, SATER, SEYMOUR AND PEASE LLP**
311 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio 45202
Telephone: 513.723.4488
Facsimile: 513.852.7818

**ATTORNEYS FOR PLAINTIFFS**